# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DREW D.,**

          **Plaintiff,**

                                                  **Case No. 1:20-cv-17550**

          **v.**                                  **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

          **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Drew D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.[2]

## I.      PROCEDURAL HISTORY

On June 18, 2015, Plaintiff filed his application for benefits, alleging that he has been disabled since June 8, 2015.[3] R. 70, 81, 235–37. The application was denied initially and upon

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[2] Because the Court has sufficient information to resolve this matter on the briefing and administrative record, Plaintiff's request for oral argument, *Plaintiff's Reply Brief*, ECF No. 18, p. 3, is denied.

[3] Plaintiff's initial application contained an alleged disability onset date of December 18, 2014, which was later changed to June 8, 2015. *Id*.

reconsideration. R. 101–05, 107–09. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 110–11. Administrative Law Judge ("ALJ") Jennifer Pustizzi held a hearing on February 2, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 24–60. In a decision dated March 20, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 8, 2015, the alleged disability onset date, through the date of the decision. R. 85–91. On July 29, 2019, the Appeals Council vacated that decision and remanded the case to the ALJ for resolution of the following issues:

> The Administrative Law Judge did not adequately evaluate the limiting effects of the claimant's alleged headaches. The decision identifies headaches, with associated pain and light sensitivity, as among the alleged symptoms reasonably related to the claimant's medically determinable impairments (Decision, page 4). However, the decision does not explain why the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical and other evidence of record. At the hearing, the claimant alleged that his headaches caused him to need to take unscheduled breaks, and interfered with production and accuracy (Hearing transcript, 12:00:31). The claimant's representative alleged that the Claimant's impairments prevented him from sustaining work activity for 2 hours at a time (Hearing transcript, 12:36:53). These allegations suggest a difficulty remaining "on task", and are significant, as the vocational expert testified that unskilled work requires a person to be off task for no more than 5% of the workday (12:31:38). Further evaluation is warranted.

R. 96.  The Appeals Council ordered that, upon remand, the ALJ must do the following:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, a consultative examination, and medical source opinion about what the claimant can still do despite the impairments.

- Further evaluate the claimant's headaches, with associated pain and light sensitivity, and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and SSR 16-3p).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

  In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

R. 96–97.

Following this remand, the same ALJ held a supplemental hearing on March 3, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 515–42. In a decision dated March 31, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 8, 2015, the alleged disability onset date, through the date of that decision. R. 12–19. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 21, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 7, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 8.[4] On the same day, the case was reassigned to the undersigned. ECF No. 9. The matter is

ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).   In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

---

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

4

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 58 years old on his alleged disability onset date. R. 17. He met the insured status requirements of the Social Security Act through December 31, 2020. R. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 8, 2015, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's macular edema and glaucoma are severe impairments. R. 15.

8

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work subject to various non-exertional limitations. R. 15–17. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an automobile appraiser. R. 17.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 7,000 jobs as a sorter; approximately 202,000 jobs as a cleaner; approximately 2,000 jobs as a sandwich board carrier–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 18. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 8, 2015, his alleged disability onset date, through the date of the decision. R. 19.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

Roberta Strauchler, M.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on July 8, 2015. R. 61–69. Dr. Strauchler opined, *inter alia*, that Plaintiff had no exertional limitations, R. 66, but had visual limitations, including limited depth

perception in both eyes and, in the right eye, limited near and far acuity as well as limited field of vision. R. 66–67. Plaintiff had unlimited color vision and accommodation. R. 67. When evaluating Plaintiff's environmental limitations, Dr. Strauchler opined that Plaintiff was unlimited in his ability to tolerate extreme cold and heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation, but that he must avoid even moderate exposure to hazards such as machinery, heights, etc. R. 67. Dr. Strauchler concluded that Plaintiff was not disabled. R. 68.

Harvey Yeager, M.D., reviewed Plaintiff's medical record for the state agency upon reconsideration on December 10, 2015. R. 71–80. He agreed with Dr. Strauchler that Plaintiff, *inter alia*, had no exertional limitations and that Plaintiff had the visual limitations identified by Dr. Strauchler. R. 76–77. Dr. Yeager also agreed with Dr. Strauchler's environmental limitation findings. R. 78. Dr. Yeager also concluded that Plaintiff was not disabled. R. 78.

**V.    DISCUSSION**

**A.    RFC and Opinion Evidence**

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to consider the impact of Plaintiff's hypertensive retinopathy and headaches with associated light sensitivity on his ability to work and failed to properly weigh the opinions of the state agency reviewing physicians. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 14–19. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

10

physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain non-exertional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is limited to reading no smaller than eighteen (18) point fonts. Additionally, the claimant requires prescription tinted glasses and is limited to simple tasks. Furthermore, the claimant would be absent one day per month due to headaches.

R. 15. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's vision diagnosis and treatment, including, *inter alia*, after Plaintiff's diagnosis of branch retinal vein occlusion of the right eye with macular edema in June 2015, treatment notes reflect that his visual acuity improved with injection treatment every five to six weeks; a corrected vision test revealed vision in the range of 20/70 through 20/400 of the right eye with generally normal vision in the left eye; in March 2018, six weeks after an injection, Plaintiff reported that Claritren had really made a difference in his vision; in April 2018, Plaintiff

presented with only mild severity of his symptoms and reported feeling better since his last injection; in addition to the injections, Plaintiff was conservatively treated topically with eye drops to be used four times per day; and by October 2018, treatment notes reflect that Plaintiff seemed stable when he continued on his five to six weeks injection routine, but noticed worsening in vision if he went past this period. R. 16. The ALJ also considered evidence regarding Plaintiff's headaches and photosensitivity, including, *inter alia*, evidence that in January 2018, Plaintiff presented with complaints of moderately dull headaches that had been occurring intermittently after watching TV, using the computer or reading; it was noted that the condition occurred above the right eye and was associated with light sensitivity; no reports of headaches were noted in the record until December 2019, when the claimant presented with complaints of having experienced blurry vision and severe headache with nausea and photosensitivity that resolved with over the counter Advil; Plaintiff reported at that time that he had no history of migraines and that these episodes had occurred only four to five times in the past; and in January 2020, Plaintiff continued to complain of severe migraines with extreme light sensitivity; on examination, Plaintiff was assessed with nuclear sclerosis, and his cataracts were not found to be clinically significant enough to warrant surgery and would instead be monitored. *Id*. The ALJ also assigned "significant weight" to the opinion of Plaintiff's treating physician, Carl H. Park, M.D., that Plaintiff had no exertional limitations and no other conditions that limited Plaintiff's ability to perform work-related activities. R. 17; *see also* R. 344−47 (copy of Dr. Park's medical source statement). The ALJ went on to further explain her RFC determination as follows:

> Accordingly, the undersigned has fully accounted for the overall evidence of record by limiting the claimant to reading no smaller than 18 fonts and requiring prescription tinted glasses, as the record documents that while maintaining consistent treatment with injections the claimant's right eye condition remains

12

> stable and only worsens when going over the prescribed period. Additionally, by limiting the claimant to simple tasks and one absent day per month, as consistent with the claimant's noted intermittent occurrences of headaches.

R. 17. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that substantial evidence does not support this determination because the ALJ "makes no mention of how the claimant's hypertensive retinopathy or headaches with associated light sensitivity, which are documented in the Record, would impact his ability to perform work functions." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 18 (citing R. 344−86, 443−45). Plaintiff insists that even if these conditions were non-severe, the ALJ should have discussed them and that her failure to do so renders the RFC deficient. *Id*. Plaintiff's argument is not well taken. As detailed above, the ALJ expressly considered Plaintiff's vision impairments as well as any symptoms flowing from those impairments, including, *inter alia*, headaches and light sensitivity, and any associated limitations, which the RFC accommodated by a limitation to reading no smaller than eighteen-point fonts, using prescription tinted glasses, a limitation to simple tasks, and being absent one day per month. R. 15−17. Notably, Plaintiff does not identify—nor can the Court locate—any additional functional limitations flowing from these conditions but which the ALJ failed to include in the RFC. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 18. Without more, these medical findings, therefore, do not establish any functional limitations. *Cf. Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the

13

diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, as previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). In short, Plaintiff has not shown that the ALJ erred in her consideration of the functional limitations associated with Plaintiff's visual impairments or that any such error warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff also challenges the ALJ's consideration of the opinions of the state agency reviewing physicians, which reads as follows:

> In addition, on July 8, 2015, state agency medical expert Roberta Strauchler assessed the medical record and opined that the claimant had no exertional limitations and could only occasionally climb ladders, ropes or scaffolds (Ex. 1A, 6). Additionally, the claimant had visual limitations for near and far acuity of the right eye (Ex. 1A, 6). The claimant was limited with depth perception bilaterally and limited with field of vision of the right eye (Ex. 1A, 7). Furthermore, the claimant should avoid even moderate exposure to hazards (Ex. 1A, 7). On reconsideration on December 10, 2015, state agency medical expert Harvey Yeager, M.D., affirmed Dr. Strauchler's opinion (Ex. 3A, 6-8). The undersigned finds that these opinions are generally consistent with the overall medical evidence of record and thus afford them some weight.

14

R. 17. Plaintiff contends that the ALJ "improperly rejected portions of Dr. Strauchler's and Dr. Yeager's assessments, specifically the limitations speaking to the claimant's *exertional* and environmental limitations" and that the ALJ failed to cite to contrary evidence to support such rejection. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 18 (emphasis added). Plaintiff contends that "[t]hese additional limitations, especially given the claimant's age and vocational profile, *could* have resulted in a finding of disability[.]" *Id*. at 18–19 (emphasis added). Plaintiff's arguments are not well taken. As a preliminary matter, although Plaintiff complains that the ALJ improperly rejected these physicians' opined exertional limitations, neither Dr. Strauchler nor Dr. Yeager identified any such limitations. R. 17, 66, 76. Moreover, Plaintiff generally refers to "environmental limitations" without any substantive discussion of which specific limitations the RFC fails to include or why any omission of such limitations requires remand. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 18–19. Notably, the state agency reviewing physicians both concluded that, even with his limitations, Plaintiff was not disabled. R. 68, 80. Based on this record, any error by the ALJ in failing to include an environmental limitation in the RFC is, at most, harmless. *Shinseki*, 556 U.S. at 409–10; *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of the state agency reviewing physicians.

B.      **Step Five**

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation, arguing that the ALJ failed to correctly apply SSR 85-15. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 8−13; *Plaintiff's Reply Brief*, ECF No. 18, pp. 1−2. This Court disagrees.

Unlike in the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). At this step, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). "[T]o improve both the uniformity and efficiency of this determination," the Social Security Administration promulgated the Medical Vocational guidelines, also known as the "Grids," "that establish the types and number of jobs that exist in the national economy for claimants with exertional impairments." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citations omitted); *see also Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) (stating that the Grids "are 'rules' which are used to direct conclusions of 'disabled' or 'not disabled' based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy)") (citations omitted). "When a claimant has solely exertional limitations, his disability status is determined by the Medical–Vocational Guidelines 'without reference to additional evidence.'" *Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 154 (3d Cir. 2013) (quoting *Sykes*, 228 F.3d at 269). "[W]here individuals have nonexertional limitations of function or environmental restrictions, the table rules (medical-vocational rules) still provide a 'framework' for consideration of how much the individual's work capability is further

diminished in terms of any types of jobs." *Allen v. Barnhart*, 417 F.3d 396, 405 (3d Cir. 2005). However, "the ALJ must reference additional evidence when determining if those limitations erode the claimant's occupational base." *Breslin*, 509 F. App'x 154 (citing *Sykes*, 228 F.3d at 270); *see also Sykes*, 228 F.3d at 270 (stating that, when claimants have both exertional and nonexertional limitations, "the government cannot satisfy its burden under the Act by reference to the grids alone"); SSR 85-15, 1985 WL 56857, at *1 (Jan. 1, 1985) (providing, *inter alia*, that where an individual has only nonexertional limitations, the Grids "do not direct conclusions of disabled or not disabled. Conclusions must, instead, be based on the principles in the appropriate sections of the regulations"). To meet this requirement, the ALJ may (1) take or produce vocational evidence (such as elicit testimony from a vocational expert, the Dictionary of Occupational Titles, or a learned treatise); (2) provide notice to the claimant that the Commissioner intends to take or is taking administrative notice of the fact that the particular nonexertional limitation(s) do(es) not significantly erode the occupational base, and allow the claimant the opportunity to respond; or (3) rely upon a SSR by citing to that SSR and including "'a statement explaining how the particular nonexertional limitation(s) . . . affects the claimant's occupational job base.'" *Allen*, 417 F.3d at 405 (quoting AR 01–1(3), 2001 WL 65745 at *4 (S.S.A.)). If the ALJ relies on a SSR, however, the ALJ must make it "crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id*. at 407.

As it relates to the arguments in this case, Grid Rule 204.00, which addresses the maximum sustained work capability for heavy work (or very heavy work) as a result of severe medically determinable impairment(s), provides as follows:

> The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well,

and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work—either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). *Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.*

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 204.00 (emphasis added). SSR 85-15, which applies in cases involving only nonexertional impairments, further instructs as follows:

As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. *However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.*

SSR 85-15, 1985 WL 56857, at *8 (emphasis added).

In the present case, the ALJ at step five considered SSR 85-15, Grid Rule 204.00, and vocational expert testimony when concluding that Plaintiff was not disabled because there were jobs that existed in significant numbers in the national economy that he could perform despite his severe impairments:

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-

vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14). If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

- A sorter, (DOT) 529.687-186, SVP 2, unskilled light exertion with approximately 7,000 jobs in the national economy,

- cleaner, (DOT) 323.687-014, SVP 2, unskilled light exertion with approximately 202,000 jobs in the national economy, and

- A sandwich board carrier, (DOT) 299.687-014, SVP 1, unskilled light exertion with approximately 2,000 jobs in the national economy

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

R. 18.

Plaintiff contends that the ALJ improperly relied on Grid Rule 204.00 when denying his claim and that, although the ALJ referred to SSR 85-15, she did not recognize or analyze Plaintiff's vocational profile under this regulation's relevant language cited above, *i.e.*, that a finding of disability could be appropriate "where the claimant's vocational profile is extremely adverse, *e.g.*, closely approaching retirement age, limited education or less, unskilled or no

19

transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential." *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 8–13 (quoting, *inter alia*, SSR 85-15) (internal quotation marks omitted); *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–2 (citing SSR 85-15). Taking the position that SSR 85-15 does not require that all these factors be present, Plaintiff argues that the ALJ should have found him disabled under SSR 85-15 because he was closely approaching retirement age, had no transferable skills, and "has essentially a lifetime commitment to a field of work in which good vision is essential." *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–2. Plaintiff further contends that the ALJ also failed to consider "the 'off task' implications of the periodic nature of the plaintiff's symptoms during each day[,]" *Plaintiff's Memorandum of Law*, ECF No. 15, p. 13; *see also id*. at 9, and that "just because the ALJ concluded there were no exertional implications does not mean there are none" and that "[n]o one who has experienced a headache can seriously or credibly deny that anything but a mild headache will impact a person's ability to sit, stand, walk, lift, carry, push and pull." *Plaintiff's Reply Brief*, ECF No. 18, p. 2.

Plaintiff's arguments in this regard are not well taken. As a preliminary matter, the ALJ did not rely solely on Grid Rule 204.00 to deny Plaintiff's claim. R. 18. Instead, the ALJ appropriately referred to this grid rule as a framework in light of the finding that Plaintiff had no exertional limitations. *Id*.; *see also Allen*, 417 F.3d 396, 405. The ALJ also considered SSR 85-15 in her finding that Plaintiff was not disabled. R. 18. Although Plaintiff complains that the ALJ did not fully consider those portions of that ruling that he finds controlling, the ALJ permissibly supplemented her consideration of SSR 85-15 by also relying on the vocational expert's testimony that there exist a significant number of jobs in the national economy that Plaintiff

could perform with his RFC.[5] *Id.*; *see also Allen*, 417 F.3d at 405. Substantial evidence supports the ALJ's determination in this regard. *See Allen*, 417 F.3d at 405; *Plummer*, 186 F.3d at 431−32 (finding that vocational expert testimony constitutes substantial evidence where the hypothetical presented to that expert "fairly set[s] forth every credible limitation set forth by the physical evidence"); *Duva v. Berryhill*, No. CV 18-943, 2019 WL 2710789, at *10–11 (D.N.J. June 27, 2019) (finding that substantial evidence supported the ALJ's step five determination where the ALJ "supplemented" consideration of SSR 85-15 with "the input of the vocational expert").

Plaintiff's insistence that he suffers from additional limitations that the ALJ erred in not including in the RFC is similarly unavailing. Here, the ALJ's hypothetical question posed to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 15, 537−39. The vocational expert responded that the jobs of sorter, cleaner, and sandwich board carrier would be appropriate for such an individual. R. 538−39. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions posed to the vocational expert is based on his assertion that not all of his alleged impairments were addressed, this criticism boils down to an attack on

---

[5] The Court notes that Plaintiff's argument that he also has exertional limitations, *Plaintiff's Reply Brief*, ECF No. 18, p. 2, undermines his present assertion−that the cited portion of SSR 85-15 directs a finding of disabled− because SSR 85-15 is inapplicable in cases involving exertional limitations. SSR 85-15, 1985 WL 56857, at *2 (clarifying "policies applicable in cases involving the evaluation of solely nonexertional impairments"); *Rutter v. Saul*, No. CV 19-263, 2021 WL 425119, at *4 (W.D. Pa. Feb. 8, 2021) ("Social Security Ruling 85-15 is titled "The Medical–Vocational Rules as a Framework for Evaluating *Solely* Nonexertional Impairments." (Emphasis added). Thus, SSR 85-15 does not apply to a case, such as this one, in which Plaintiff suffers from a combination of exertional and non-exertional impairments.").

the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already

rejected for the reasons previously discussed.

In addition, while Plaintiff insists that the ALJ should have included an "off task"

limitation, Plaintiff points to no medical opinion or functionality finding supporting such a

limitation. *See generally Plaintiff's Memorandum of Law*, ECF No. 15; *Plaintiff's Reply Brief*,

ECF No. 18. Notably, as previously discussed, an ALJ need include only "credibly established"

limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC,

2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate

limitations which do not exist, or which cannot be found in the medical record. No specific

functional limitations were provided by any of Plaintiff's medical sources with respect to her

carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). Absent any credible

evidence that Plaintiff has such a limitation, "'it would be error to include limitations not

credibly established by the record when relying on a vocational expert's testimony to make a

disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J.

May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS

173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829

F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a

claimant's impairments that are supported by the record; otherwise the question is deficient and

the expert's answer to it cannot be considered substantial evidence") (citation omitted); *Harris v.

Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While

the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a

person who is occasionally unable to respond appropriately to supervisors would indeed be

unemployable—there is no evidence in the record to support Plaintiff's contention that there are

times in the day that she would be wholly unable to interact with supervisors in an appropriate

manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing

with them.").

Finally, Plaintiff's contention that "just because the ALJ concluded there were no

exertional implications does not mean there are none" and that "[n]one who has experienced a

headache can seriously or credibly deny that anything but a mild headache will impact a person's

ability to sit, stand, walk, lift, carry, push and pull[,]" *Plaintiff's Reply Brief*, ECF No. 18, p. 2, is

simply speculative. Plaintiff again fails to identify any medical opinion or functionality finding

supporting such a limitation. *See id*. Although Plaintiff goes on to rely on his own testimony, *id*.,

the ALJ specifically considered Plaintiff's subjective complaints, but properly concluded that

those "statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record[,]" R. 16, a

finding that Plaintiff does not challenge.

In short, the Court finds that the Acting Commissioner has carried her burden at step five

of the sequential evaluation and concludes that substantial evidence supports her determination

in this regard.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).


Date:  May 6, 2022                                  *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE